**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

RITTER DISPOSABLES, INC.            *
                                      *
           Plaintiff           *
                                      *
V.                             *
                                    *       NO: 3:11CV00201SWW
PROTNER NUEV TECNICAS, S.L.,    *
and JAVIER MASIA             *
                                      *
           Defendants

## ORDER

Ritter Disposables, Inc. ("Ritter") brings this breach of contract action against Protner Nuevas Tecnicas, S.L. ("Protner") and Javier Masia ("Masia"). Before the Court is Defendants' motion to dismiss pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure, for insufficient service of process, and Rule 12(b)(2), for lack of personal jurisdiction (docket entries #8, #9). Ritter has filed a response in opposition (docket entry #14), Defendants have filed a reply (docket entry #15), and Ritter has filed a sur-reply (docket entry #19). After careful consideration, and for reasons that follow, Defendants' motion is granted in part and denied in part. The Court finds that Ritter has made the requisite *prima facie* showings that process has been served in Spain and that separate defendant Protner's contacts with Arkansas are sufficient to subject Protner to suit in this forum. However, the Court finds that Ritter has failed to carry its *prima facie* burden to show personal jurisdiction over separate defendant Masia.

### I.  Complaint Allegations

The following facts are alleged in the complaint. Ritter is a Florida corporation, with principal offices in Marion, Arkansas; Protner is a "purported" Spanish corporation or entity,

with principal offices in Spain; and Masia is a resident of Spain and a representative of Protner.

The parties agreed that Protner would manufacture machinery for Ritter.  Beginning in early summer 2010, representatives of Ritter and Protner had verbal, written, and electronic communications regarding the material terms of the purchase agreement, including that Ritter would make a down payment of $149,602 and that Protner would ship the machinery by December 2010, in time for Ritter to meet customer requirements. Protner and Masia knew that Ritter was located in Arkansas and that the machinery, to be manufactured in Spain, would be shipped to Arkansas, where it would be installed, operated, and maintained

Ritter made the $149,602 down payment to Protner, and on or about September 14, 2010, Protner sent Ritter a contract ("Contract") signed by Masia on behalf of  Protner.  Ritter did not and has not signed the Contract.  With knowledge of Ritter's time constrains,  Protner began the design and manufacture of the machinery.  Subsequently, it became apparent to Ritter that Protner would be unable to complete the manufacture and shipment of the machinery in a timely manner.  After Protner failed to respond to Ritter's multiple inquiries regarding the status of the machinery, Ritter purchased machinery from an alternative source in order to cover its needs and mitigate damages.

When the parties entered negotiations, Protner was not legally organized as a legally constituted Spanish entity or corporation, and Protner did not complete the process of Spanish incorporation until after September 14, 2010, when Protner sent Ritter the Contract.  During negotiations with Ritter, however, Masia represented that Protner was a valid corporation.

The Contract that Protner transmitted to Ritter concludes with an arbitration clause, which provides that any claim resulting from the fulfillment or interpretation of the Contract will

be resolved conclusively by arbitration "within the framework of the Arbitration Court of Alcoy [,Spain] . . . ." Compl., Ex. A.  In June 2011, Protner initiated an arbitration request in Spain pursuant the arbitration clause contained in the Contract.  According to Ritter, Protner attempted to manipulate the arbitration proceeding in its favor and refused to agree to an English-speaking arbitrator.

On July 12, 2011, Ritter commenced this action for breach of contract in state court, seeking an injunction barring Protner from proceeding with an arbitration proceedings in Spain, a declaratory judgment that any contract between the parties is null and void, return of the aforementioned  $149,602 deposit, and $939, 226.06 in damages including lost profits.

On July 13, 2011, the Circuit Court for Crittenden County, Arkansas entered a temporary restraining order prohibiting Defendants from "proceeding in any fashion with any Spanish arbitration process or proceeding concerning the allegations raised in Plaintiff's complaint . . . . " Docket entry #1, Ex. #2.   By letter dated August 5, 2011, Ritter, through counsel, transmitted a letter to Defendants, notifying them of this lawsuit and the temporary restraining order and stating that formal service of process would follow.  *See* docket entry #9, Ex. A.   On October 3, 2011, Ritter filed a certified return of process in state court.  *See* docket entry #14, Ex. B.  On October 5, 2011,  Defendants removed the case to federal court, asserting that the Court has original jurisdiction by virtue of diversity of citizenship between the parties and an amount in controversy exceeding $75,000.

### III.  Defendants' Motion to Dismiss

Defendants seek dismissal for insufficient service of process under Rule 12(b)(5) and for lack of personal jurisdiction under Rule 12(b)(2).   Although Ritter bears the ultimate burden to

prove service of process and personal jurisdiction by a preponderance of the evidence, to survive

a motion to dismiss, Ritter need only make a *prima facie* showings that it effected service of

process on Defendants and that the Court has personal jurisdiction over Defendants.  *See*

*Northrup King Co. v. Compania Productora Semilas Algodoneras Selectas, S.A.,* 51 F.3d 1383,

1387 (8th Cir. 1995)(citing *Dakota Industries, Inc. v. Dakota Sportswear, Inc*.  946 F.2d 1384,

1387 (8th Cir. 1991)).

### Sufficiency of Service of Process

Defendants assert that Ritter failed to effect service of process on Masia, an individual,

and Protner, a Spanish limited liability company.   Rule 4(f)(1) of the Federal Rules of Civil

Procedure provides that  an individual in a foreign country may be served by "any internationally

agreed means of service that is reasonably calculated to give notice, such as those authorized by

the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."  Fed. R.

Civ. P. 4(f)(1).  Rule 4(h)(2) governs service on a foreign corporation, partnership, or other

unincorporated association outside a judicial district of the United states and provides that unless

otherwise provided by federal law, service may be effected by an manner prescribed for

individuals under Rule(f), except personal delivery under Rule 4(f)(2)(C)(I).

The Hague Convention, to which the United States and Spain are parties, states that its

purpose is "to create appropriate means to ensure that judicial and extrajudicial documents to be

served abroad shall be brought to the notice of the addressee in sufficient time" and "to improve

the organization of mutual assistance . . . by simplifying and expediting the procedure."  Hague

Convention, preamble, 20 U.S.T. 361, *reprinted in*  Fed. R. Civ. P. 4, Treaties and Conventions

at 60 (West 2012).

Articles 2 through 6 of the Hague Convention provide procedures for service by a central

authority designated by each member nation.  In addition to service of process through a

country's central authority, the Hague Convention provides a variety of additional  methods of

service, but it permits a signatory nation to object to any of the additional procedures.   Important

in this case, Article 10(c) of the Hague Convention states, "Provided the State of destination

does not object, the present Convention shall not interfere with . . . the freedom of any person

interested in a judicial proceeding to effect service of judicial documents directly through the

judicial officers, officials or other competent persons of the State of destination."  Ritter

maintains that it effected service of process an Masia and Protner in accordance with Article

10(c).

Ritter's attorney of record, William L. Bomar, testifies by affidavit that Ritter engaged

counsel in Spain to secure an appropriate officer to personally serve Defendants pursuant to the

Hague Convention.  *See* docket entry #14, Ex. A (Bomar Aff.) ¶ 5.  Bomar reports that Ritter's

Spanish counsel and Defendants' counsel in Spain agreed that Defendants would make

themselves available to accept formal service of process, and on September 19, 2011, Daniel J.

Dabrowski ("Dabrowski") delivered summonses and copies of the complaint to Protner's

physical business address, where they were received and accepted by a Protner employee.  *See*

Bomar Aff. ¶ 6.  Bomar further  states that Ritter went to great expense and effort to have all

documents translated into Spanish and to  accomplish service of process in accordance with the

Hague Convention.  *See* Bomar Aff., ¶ 10.

By affidavit, Dabrowski testifies to the following:

• Dabrowski is a resident of Spain and an official procurador under Spanish law. A

5

"procurador" is roughly the equivalent of a court representative or proctor.

- In July or August 2011, a law firm with offices in Spain engaged Dabrowski to undertake service of a complaint and summons on Protner and Masia. Dabrowski attempted service on August 11, 2011 at Protner's place of business, and he encountered a person who refused to identify himself, refused service, and indicated that Protner was closed for vacation until August 29, 2011.

- Dabrowski attempted service again on September 6, 2011, and an individual, who identified himself as Fransciso Domemech ("Domemech") and stated that he was a Protner employee, refused service. Domemech told Dabrowski that Protner's lawyers had advised him to refuse service and that Masia would be away until September 9, 2011. Dabrowski provided Domemech his contact information.

- On September 6 or 7, 2011, Dabrowski was contacted by Ruth Gonzalez, who identified herself as counsel for Protner and Masia. Gonzalez inquired about the nature of documents Dabrowksi had attempted to serve, and Dabrowski declined to provide any information prior to serving the documents.

- Gonzalez contacted Dabrowski again on September 19, 2011 and stated that "they were willing to be served."

- Dabrowski went to Protner's place of business on September 19, 2011 and again encountered Domemech, who voluntarily accepted service of process for Protner and Masia and signed a receipt. *See* Dabrowski Aff., Ex. B.

- Dabrowski executed the return of service form on the summons forms and returned them to Ritter's counsel. *See* Dabrowski Aff., Ex. C.

Docket entry #18, Ex. A (Dabrowski Aff.).

The parties agree that Spain has not objected to the alternative forms of service provided under Article 10(c). However, Defendants argue that Spanish law does not authorize service by private individuals and mandates service by judicial officials only. Defendants present the affidavit of Elena Lopez Ayuso ("Lopez"), a Spanish attorney, who testifies that under Spanish rules of procedure, a procurador must be authorized by a court to carry out service in a specific case. Defendants assert that Dabrowksi is not a judicial officer, and he was not authorized by a court to effect service in this case.

6

In response, Ritter presents an affidavit by Spanish attorney Jon Aurrecoechea

("Aurrecoechea"), who opines that Lopez construes Spanish procedural rules too narrowly. *See*

docket entry #18, Ex. B.  Citing the Spanish Civil Procedure Act ("SCPA"), Aurrecoechea states

that the SCPA permits the procurador of a party who has already appeared before the court to

carry out service of process without assistance of a court, by means of personal service.

Aurrecoechea notes that there is no Spanish judicial proceeding in this case, and the SPCA does

not provide a procedure for obtaining court authorization for service of process in a foreign

proceeding.

Article 10(c) permits service of judicial documents directly through judicial officers or

officials or "other competent persons of the State of destination."   Although Spain has a specific

procedure for service by personal delivery by a judicial officer in cases pending in local courts,

the Court finds no evidence that the Spanish law expressly or impliedly prohibits private

individuals from serving process arising out of foreign litigation.   Dabrowski testifies that he is

an adult resident and citizen of Spain and an official procurador under Spanish law, and the

Court finds that he qualifies as a competent person for purposes of Article 10(c).

Defendants also argue that service upon Masia was insufficient because he was not

served personally.  Lopez acknowledges that under Spanish procedural rules,[1] an individual's

place of work can be considered his domicile for purposes of service of process, and in the

absence of the defendant, service can be accomplished upon any person who affirms to know the

---

[1]Rule 4(f)(2)(A) of the Federal Rules of Civil Procedure addresses service upon an
individual in a foreign country and provides that if there is no  internationally agreed means, or if
an international agreement allows but does not specify other means, an individual may be served
"as prescribed by the foreign country's law for service in that country in an action in its courts of
general jurisdiction."  Fed. R. Civ. P. 4(f)(2)(A).

defendant or by a worker in charge of receipt of deliveries.  However, Lopez opines that there is

no evidence that Dabrowski used witnesses or any other method to prove that Mr. Domemech

was authorized to receive process for Masia.

Dabrowski testifies under oath that when he first attempted service at Masia's place of

business, Domemech identified himself as a Protner employee, and he refused service in

accordance with directions he received from Protner's lawyers.  Dabrowski states that

Domemech informed him that Masia would be away until September 9, 2011.  Dabrowski

further testifies that after Defendants' Spanish attorney told him that Masia and Protner would

accept service, he returned to Protner's and Masia's place of business, where Domemech

voluntarily accepted the summons and complaint for Masia and signed a receipt.  A copy of the

receipt is attached to Dabrowski's affidavit. *See* Dabrowski Aff., Ex. B.  Defendants do not

dispute Dabrowski's account of events, and the Court finds that Ritter has met its *prima facie*

burden to show that it accomplished service of process  upon Masia and Protner in accordance

with the Hague Convention and the Federal Rules of Civil Procedure.

**Personal Jurisdiction**

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a

*prima facie* showing that personal jurisdiction exists, which is accomplished by pleading facts

sufficient to show that the defendants can be subject to jurisdiction within the state.  See *K-V*

*Pharmaceutical Co. v. J. Uriach & CIA, S.A.,* 648 F.3d 588, 591(8th Cir. 2011)(citations

omitted).   Such a *prima facie* showing "must be tested, not by the pleadings alone, but by the

affidavits and exhibits presented with the motions and opposition thereto." *Dever v. Hentzen*

*Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir.2004).

Although the plaintiff bears the ultimate burden of proof, personal jurisdiction over the defendant need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing.  *See Dakota Industries, Inc. v. Dakota Sportswear, Inc*.  946 F.2d 1384, 1387 (8th Cir. 1991)(citing *Cutco Ind. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986)). "If the district court does not hold a hearing and instead relies on pleadings and affidavits, . . . the court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party."  *Id*. (citations omitted).

A federal court sitting in a diversity action may assume jurisdiction over a nonresident defendant to the extent permitted by the long arm statute of the forum state.   Arkansas's long-arm statute permits the assertion of jurisdiction to the fullest extent allowed by the Fourteenth Amendment's Due Process Clause, which permits the exercise of personal jurisdiction over a nonresident defendant that has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154 (1945)(quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)).

The Supreme Court has held that in order to exercise personal jurisdiction, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S. Ct. 1228 (1958).   Five factors should be considered when resolving a personal jurisdiction inquiry:  (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest in the forum state in providing a

forum for its residents; and (5) the convenience of the parties. *Digi-Tel Holdings, Inc. v. Proteq*

*Telecommunications (PTE), Ltd.*, 89 F.3d. 519, 522-23 (8th Cir. 1996).[2]  The first three factors

are closely related and are of primary importance, while the last two factors are secondary. *Id.* at

523.

 In an effort to demonstrate that Defendants purposefully availed themselves of the

privilege of conducting activities within Arkansas, Ritter points to several clauses included in the

Contract, which was drafted by Protner.

 First, the Contract contains a setup and installation provision that states: "Technicians are

available, at the purchaser's expense, to assist with the installation and start up of the machine."

Compl., Ex. A.  Ritter argues that the foregoing provision clearly contemplates  the use of

Protner employees to assist with the installation and start up of the machinery in Arkansas.

Second, the Contract contains a warranty provision, which states that the machine would be

warranted for a 12-month period from the date of shipment, during which Protner "will supply,

free of charge, any spare part once they have the faulty one." *Id*.  Third, the Contract provides

that Ritter will pay 95% of the purchase price before installation and "5% after installation *and*

*acceptance at the customer's facilities*." *Id*.(emphasis added).  Fourth, under the heading

---

 [2]The Supreme Court has identified two types or theories of personal jurisdiction: general
and specific.   General personal jurisdiction exists when the defendant has "continuous and
systematic" contacts with the forum state, even if the injuries at issue in the lawsuit did not arise
out those contacts. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408,
415-16, 104 S.Ct. 1868 (1984).  Specific personal jurisdiction, in contrast, exists only if the
injury giving rise to the lawsuit occurred within or had some connection to the forum state. *Id*. at
414, 104 S.Ct. 1868.   Here, the defendants' alleged contacts with Arkansas are related to the
dispute giving rise to this litigation and are insufficient to subject the separate defendants to
general jurisdiction in Arkansas.

"Retention of Title," the contract reads:  "All goods object of this contract will remain property

of PROTNER until complete payment of the price.  Until then, the goods will be considered as a

deposit held by the purchaser, with all the obligations as a depositary."  *Id*.  Fifth, under the

heading "Industrial Property Rights," the Contract provides:

> PROTNER retains the industrial property rights of the machines supplied by
> PROTNER, as well as the KNOW-HOW, and concedes to the purchaser the usufruct
> of these rights.  The purchaser will not disclose any details of the machine to third
> parties and will ensure that none of his personnel does.  In the event of the purchaser
> selling the machine [to] a third party, this cannot be a company competitor of
> PROTNER, and the purchaser will advise the third party about PROTNER'S
> property rights and pass along this obligation here described to the third party,
> notifying . . . PROTNER in [writing] the identity of the third party.

*Id*.

In support of Defendants' motion to dismiss, Masia testifies that Protner is a Spanish

limited liability mercantile company and that he is Protner's sole member and shareholder.

According to Masia, Protner sells machinery manufactured by another entity:  Promotora Nuevas

Tecnicas, S.A. ("Promotora"), a Spanish corporation.  Masia states that in September 2009,

Promotora commenced a proceeding, which is still pending, similar to a business reorganization

available under United States bankruptcy laws.   Masia testifies that Protner is not registered to

do business in the United States, it has no registered agent, property, bank accounts or business

operations in this country, and it does not direct advertisements to the United States.

Masia recalls that in July 2009, Ritter's representative, Mark Pisahl ("Pisahl") contacted

him through Promotora's website and inquired about the manufacture and purchase of a machine

for Ritter.[3]   Masia states that he and Pisahl communicated via email messages regarding the

possibility that Ritter might purchase equipment from Promotora, and in March 2010, Pishal

visited Promotora's facilities in Spain for a machine demonstration.  Masia states that he has no

connection with Arkansas and did not visit the United States in his dealings with Ritter.

Masia testifies that Pisahl voiced concern about Promotora's insolvency, and the two

discussed conducting the machinery sale "through a new entity to be formed, which was

ultimately Protner."  Docket entry #9, Ex. #1, ¶ 6.  On September 14, 2010, Protner transmitted

the Contract to Ritter, which Masia contends contained all of the proposed terms and conditions

associated with the sale.

The Contract, which bears Masia's signature, states: "Order is confirmed when down

payment is received and embossing pattern defined."  Compl., Ex. A.  Exhibits attached to

Masia's affidavit show that on September 16, 2010, Ritter wired a down payment to a Spanish

bank, and on October 11, 2010, Protner received confirmation regarding an embossing pattern.

Masia states that in March 2011, Grant Coblentz from Ritter visited Spain to test

machines and that Ritter ultimately reneged on the purchase agreement and purchased machinery

elsewhere.

Defendants assert that Masia's negotiations with Pisahl and Coblentz were made to

achieve a one-time sale of machinery and that Protner "went to great lengths" in ensure that no

---

[3]In its complaint, Ritter alleges that the parties' communications began in early summer
2010.  However, Defendants present a copy of an email, dated July 31, 2009, to
"protner@protner.com," from Mark T. Pisahl of Ritter Disposables, Inc., which states: "Please
have someone contact me from WALI.  I'm interested in purchasing 130 napkin folding
machine.  I can be reached either by email or my office in the USA."  Docket entry #9, Ex. #1
(Masia Aff.), attached Ex. B.

contact was made with any country outside of Spain.  Defendants contend that the parties agreed

that the machinery would be built in Spain, inspected in Spain, and retrieved by Ritter in Spain

and that any disputes arising from the transaction would be arbitrated in Spain.

In response to Masia's affidavit, Pisahl testifies that at no time was he aware that an

entity known as Promotora was insolvent.  Pishal further testifies that based on multiple verbal,

email, and telephone communications he had with Masia, Masia was aware that machinery

purchased by Ritter would be installed, maintained, and warrantied in Arkansas.  According to

Pisahl, the parties contemplated the use of Protner employees to assist in the installation and

startup of the machinery in Arkansas.

Viewing the record in a light most favorable to Ritter, the Court now assesses Protner's

purposeful contacts with the state of Arkansas.  Ritter contends that Protner was not properly

incorporated when Masia sent the Contract to Ritter on September 14, 2010, but Ritter

acknowledges that Protner obtained a deed of incorporation by September 24, 2010.  *See* docket

entry #14, Ex. E (Aurrecoechea Aff.).  Additionally, email communications between Protner and

Ritter dated after September 24, 2010 indicate that Protner adopted the Contract and any related

pre-incorporation negotiations by Masia.  Accordingly, the Court finds that Masia's pre-

incorporation activities are properly assigned to Protner. *See Rees v. Mosaic Technologies, Inc.*,

742 F.2d 765, 769 (3rd Cir. 1984)(citations omitted)("The acts of ratification relate back to the

time of the original activities and establish an agency relationship permitting the acts of the

promoter to constitute, in effect, acts done by the corporation.").

In the course of negotiating and carrying out the parties' transactions, Protner sent

multiple email communications to Ritter and placed telephone calls to Ritter in Arkansas.

Although such contacts alone are not sufficient to satisfy due process requirements, they count

toward minimum contacts that support personal jurisdiction. *See Northrup King Co. v.*

*Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1388 (8th Cir. 1995).

Protner also transmitted the Contract to Protner in Arkansas.[4]

Also relevant are the terms of the Contract. *See K-V Pharmaceutical Co. v. J. Uriach &*

*CIA, S.A.* 648 F.3d 588, 594 (8th Cir. 2011)(finding that contract terms and future consequences

contemplated in fashioning contract terms relevant, even where terms not carried out). The

Supreme Court has held that an individual's contract with an out-of-state party, standing alone, is

insufficient to establish sufficient minimum contacts in the other party's home forum to support

personal jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S. Ct. 2174,

2184-85 (1985). Instead, the Court has "emphasized the need for a 'highly realistic' approach

that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior

business negotiations with future consequences which themselves are the real object of the

---

[4]The Contract sets forth the following introductory statement, which includes Ritter's
Arkansas address:

> This contract by and between:
> * RITTER DISPOSABLES, INC.
>      4166 Mid America Blvd.
>      P.O. Box 321
>      Marion, AR 72364
>      U.S.A.
>
> * PROTNER NEUVAS TECNICAS, S.L.
>      Av. La Lianona, 13-15
>      Pol. Ind. Algers
>      03820 Cocentaina (Alicante)
>      SPAIN

Compl., Ex. A.

business transaction.'" *Id.* (citing *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316-317, 63

S.Ct. 602, 604-605 (1943)).   In a contract case, in determining whether a defendant purposefully

established minimum contacts with the forum state, pertinent factors include the parties' prior

negotiations, contemplated future consequences, the terms of the contract, and the actual course

of dealings. *See  Burger King*, 471 U.S. 462 at 479, 105 S.Ct. 2174.

The Contract, drafted on Protner's letter head, contains Masia's signature and a signature

block reserved for Ritter Disposables, Inc., Mark T. Pisahl.  It appears that Protner contemplated

that the Contract would be partially executed in Arkansas.   The terms of the Contract indicate

that Protner envisioned a long-term relationship with Ritter that would include substantial

contacts with the forum state, including the possibility that Protner employees or agents would

be present in Arkansas to assist with installation and maintenance of the machinery. The

Contract also provides that Protner would retain ownership of the machinery until receipt of the

final payment, which would occur after the acceptance and installation of the machinery in

Arkansas.  Furthermore, the Contract provides that after delivery, Protner would retain industrial

property rights related to the machinery, and the Contract dictates that  Ritter may not sell the

machinery to Protner's competitors.

Considering Protner's communications directed to Arkansas and the terms of the

Contract, the Court finds that the nature, quality, and quantity of Protner's contacts with the

forum state and the relationship of those contacts with this cause of action, favor a finding that

Protner is subject to personal jurisdiction in Arkansas.[5]

---

[5]The Court does not find that the inclusion of a clause requiring arbitration in Spain
negates personal jurisdiction or diminishes Protner's purposeful contacts with Arkansas.

The Court also finds that Arkansas has an interest in providing a forum for resident

corporations such as Ritter. Finally, regarding convenience of the parties, a plaintiff is generally

entitled to select the forum in which it will litigate, and any inconvenience that Protner will

experience by litigating in this forum is equal to the hardship that Ritter would experience if

forced to litigate in Spain.

In sum, the Court finds that Ritter has made an adequate *prima facie* showing of personal

jurisdiction over Protner. However, Ritter has failed to make the same showing with respect to

Masia in his personal capacity. Personal jurisdiction over a corporation does not automatically

include personal jurisdiction over the corporation's employees and representatives. *See Dakota*

*Industries, Inc. v. Ever Best Ltd.* 28 F.3d 910, 915 (8th Cir. 1994)("Whether an individual is

subject to the jurisdiction of a federal court is a separate threshold issue, which the district court

conflated with the issue of the individuals' liability for corporate actions."). It appears from the

record that Masia's only activities directed at Arkansas consisted of email communications and

telephone calls to Ritter. Ritter does not claim that Masia is a party to the Contract or that Masia

exerts such control over Protner that he and Protner can be viewed as one in the same.[6]

Accordingly, the Court finds that Ritter has failed to show that Masia had contacts with Arkansas

sufficient to confer personal jurisdiction here.

### IV. Conclusion

For the reasons stated, the Court finds that Defendants' motion to dismiss should be and

---

[6]Ritter alleges that Masia misrepresented Protner's corporate status during negotiations, but Ritter does not bring a separate claim against Masia based on his alleged misrepresentations.

it is hereby GRANTED IN PART AND DENIED IN PART.   Separate Defendant Javier Masia

is dismissed as a party to this action for lack of personal jurisdiction.

IT IS SO ORDERED THIS 5TH  DAY OF SEPTEMBER, 2012.


/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE